UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| L.A., by and through her Guardian MAURICE ANDREWS, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:22-cv-1019 |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Take-Two Interactive Software, Inc. ("Take-Two" or "Defendant") hereby removes the above-captioned action (the "Action") from the Circuit Court of the Seventeenth Judicial Circuit, Winnebago County, Illinois (the "State Court"), to the United States District Court for the Northern District of Illinois, on the grounds that this Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because the Class Action Complaint & Jury Demand (the "Complaint") filed in the State Court by Plaintiff L.A., by and through her Guardian Maurice Andrews, individually and on behalf of all similarly situated individuals, ("Plaintiff"), plausibly seeks relief in excess of $5,000,000, exclusive of interests and costs, and seeks certification of putative classes that satisfy CAFA's minimum diversity threshold. By removing this case, Take-Two does not waive, but expressly reserves, any and all defenses available to it.

**I.     BACKGROUND**

1.     Plaintiff commenced the Action on January 11, 2022, by filing the Complaint, captioned as *L.A., by and through her Guardian Maurice Andrews, individually and on behalf of all similarly situated individuals v. Take-Two Interactive Software, Inc., a Delaware Corporation*, Case No. 2022-LA-0000009, in the State Court.   On January 28, 2022, Plaintiff filed a Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery (the "Motion").  Defendant was served with the Summons and Complaint on February 3, 2022.

2.     True and correct copies of the Complaint, *pro forma* motion for class certification, summons, and all other process, pleadings or orders to date of which Take-Two is aware, are attached to this Notice of Removal as **Exhibit A**, as required by 28 U.S.C. § 1446(a).

3.     Plaintiff alleges in the Complaint that she brings this class action "on behalf of herself and others similarly situated due to deceptive and misleading trade practices engaged in by Defendant in marketing and selling 'lootboxes' and other in-game items for its online videogame series, including NBA 2K and other of Defendant's games."  *See* Ex. A, Complaint ¶ 1.  The Complaint recites five counts: Count One, for violation of New York General Business Law ("GBL") §§ 349-50, on behalf of Plaintiff and the "Class"[1]; Count Two, for violation of New York General Obligation Law § 5-419, on behalf of Plaintiff and the "Lootbox Subclass"; Count Three, for violation of GBL §§ 349-50, on behalf of Plaintiff and the "Minor Subclass"; Count Four, for declaratory judgment on behalf of Plaintiff and the Minor Subclass; and Count Five, for negligent misrepresentation on behalf of Plaintiff and the Minor Subclass.

---

[1] The "Class," "Loobox Subclass," and "Minor Subclass" are defined in the Complaint and below.

4. Promptly after filing this Notice of Removal, Defendant will give written notice of the removal to Plaintiff through their attorneys of record in the Action, as well as to the Clerk of the State Court, as required by 28 U.S.C. § 1446(d).

5. The State Court is located within the Northern District of Illinois. 28 U.S.C. § 93(a). This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

6. Take-Two is the only defendant in this case, and as such, no additional defendants must join in or consent to the removal of this action.

7. Take-Two does not make or intend to make any admission of fact, law, liability, or damages in this Notice of Removal. Take-Two reserves all defenses, affirmative defenses, objections, and motions. Take-Two also does not waive, and expressly reserves, all rights to challenge the propriety of certification under the applicable rules.

## II. NOTICE OF REMOVAL IS TIMELY

8. The Summons was issued by the clerk in the State Court on January 28, 2022. Defendant was served with the Summons and Complaint on February 3, 2022. *See* Declaration of Matthew Brietman, dated February 24, 2022 ("Breitman Decl."), attached hereto as **Exhibit B**, at ¶ 5.

9. Thus, this Notice of Removal is timely filed because it was filed within 30 days of service of the Summons and Complaint, as required by 28 U.S.C. § 1446(b)(3).

## III. THIS COURT HAS ORIGINAL JURISDICTION OVER PLAINTIFF'S CLAIMS PURSUANT TO CAFA

10. This Court has original jurisdiction under CAFA. 28 U.S.C. § 1332(d). CAFA grants district courts original jurisdiction over class actions filed under state law in which any member of a putative class is a citizen of a state different from any defendant, the class has at least

3

100 members, and where the amount in controversy for the putative class members exceeds $5 million, exclusive of interests and costs. *Id.*; *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014).

11. CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

A. **The Action is a Class Action**

12. The Action has been styled as a "Class Action Complaint & Jury Demand" and repeatedly references the putative Class and Subclasses. *See* Ex. A, generally; *see also id.* at ¶ 89 (alleging putative Class and Subclass definitions).

B. **Minimum Diversity Exists**

13. Minimum diversity exists under CAFA when any plaintiff, or prospective class member, is diverse from any defendant. 28 U.S.C. § 1332(d)(2)(A). As correctly alleged in the Complaint, Defendant is a Delaware corporation with its principal place of business in New York. *See* Ex. A, Complaint ¶ 9. At the time of this Notice of Removal, Take-Two remains a Delaware corporation with its principal place of business in New York. Breitman Decl. ¶ 3.

14. The named Plaintiff in the Action (and her Guardian) are citizens of the State of Illinois. *See id.* ¶ 8. Accordingly, minimum diversity exists for purposes of 28 U.S.C. § 1332(d)(2)(A) for all Counts of the Complaint.

15. Count One is limited to the purported nationwide Class: "All persons in the United States who, during the applicable limitations period, had an account with Defendant that they used to play a game on any device and in any mode and (a) exchanged in- game virtual currency for

4

any in-game benefit, or (b) made a purchase of virtual currency or other in-game benefit for use within such game." Ex. A, Compl., ¶ 89.

16. Count Two is limited to the purported nationwide Lootbox Subclass: "All persons in the United States who, during the applicable limitations period, exchanged in-game virtual currency within one of Defendant's games for a lootbox in-game item." *Id.*

17. Counts Three, Four, and Five are limited to the purported nationwide Minor Subclass: "All persons in in the United States who, before reaching the age of majority, created an account with Defendant that they used to play a game on any device and in any mode and (a) exchanged in-game virtual currency for any in-game benefit, or (b) made a purchase of virtual currency or other in-game benefit for use within such game." *Id.*

18. Thus, each of the putative classes Plaintiff seeks to represent are alleged to include persons from every state in the United States. Accordingly, minimal diversity exists between the putative classes alleged in the Complaint and New York-based Take-Two for purposes of removal under CAFA for Counts One through Five.

**C. There Are Well Over 100 Members in Plaintiff's Putative Class and Subclasses**

19. CAFA requires the existence of at least 100 members in Plaintiff's putative class. 28 U.S.C. § 1332(d)(5)(B).

20. As noted above, Plaintiff seeks to represent a nationwide Class who, "during the applicable limitations period, had an account with Defendant that they used to play a game on any device and in any mode and (a) exchanged in-game virtual currency for any in-game benefit, or (b) made a purchase of virtual currency or other in-game benefit for use within such game." Ex. A, Complaint ¶ 89.

5

21. Plaintiff alleges that "[m]embers of the Class include thousands of present and former players of Defendant's games who have already been subject to Defendant's deceptive and unfair trade practices." *Id.* ¶ 93. Thus, based on Plaintiff's own allegations, CAFA's requirement for a prospective class over 100 members has been met.

22. Indeed, as set forth in the Breitman Declaration, as of January 11, 2022, in just the last year, there were millions of persons in the United States who had an account on one or more Take-Two games and "(a) exchanged in-game virtual currency for any in-game benefit or (b) made a purchase of virtual currency or other in-game benefit for use within such game." Breitman Decl. ¶ 8.

23. Based on this evidence, and Plaintiff's own allegations, CAFA's requirement for a prospective class over 100 members has been met.

**D. The Amount in Controversy Exceeds $5 Million**

24. CAFA authorizes the removal of a class action in which the amount in controversy for all potential class members exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332. "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee*, 135 S. Ct. at 554.

25. Although Defendant denies Plaintiff's claim of wrongdoing, the allegations in the Complaint and the total amount of compensatory damages and attorneys' fees at issue in the Action, on an aggregate, class-wide basis, would exceed this Court's jurisdictional minimum of $5 million.

26. In Count One of the Complaint, Plaintiff alleges that she "and other members of the Class did reasonably rely on Defendant's misrepresentations in choosing to purchase Defendant's virtual in-game products, and would not have purchased them had Defendant not

made the false and deceptive representations regarding their value." Ex. A, Compl., ¶ 107. Plaintiff's broad definition of the "Class" includes all persons in the United States who "had an account with Defendant that they used to play a game on any device and in any mode and (a) exchanged in-game virtual currency for any in-game benefit, or (b) made a purchase of virtual currency or other in-game benefit for use within such game." *Id.* ¶ 89. Because Count One of the Complaint alleges that Plaintiff and every one of the putative Class members "would not have purchased" in-game products or virtual currency, it purportedly seeks to unravel all transactions for in-game products or virtual currency across all Take-Two games. Counts Two through Five similarly seek to unravel certain subsets of the transactions for in-game products or virtual currency across all Take-Two games, specifically: (1) transactions involving alleged "lootboxes"; and, (2) transactions allegedly completed by minors.

27. As set forth in the Breitman Declaration, the relief requested by Plaintiff on behalf of herself and the Putative Class and Subclasses far exceeds $5 million. According to Take-Two's publicly-issued earnings release for the third quarter of its fiscal year 2022, ended December 31, 2021, "recurrent consumer spending" (which is generated from ongoing consumer engagement and includes virtual currency, add-on content and in-game purchases) represented 57% of total Net Bookings (~493.6 Million) in that quarter alone. Breitman Decl., ¶ 9.[2] Net Bookings from recurrent consumer spending in fiscal years 2020 and 2021 was reported to be in the billions:

- 2020: 53% of Net Bookings (~$1.58 Billion)
- 2021: 65% of Net Bookings (~2.31 Billion).

*Id.*

---

[2] Net Bookings is an Operational Metric and is defined as the net amount of products and services sold digitally or sold-in physically during the period, and includes licensing fees, merchandise, in-game advertising, strategy guides and publisher incentives. Breitman Decl., ¶9, n.1.

28. A significant portion of Net Bookings from recurrent consumer spending (far greater than $5 million) is attributable to the virtual currency and in-game purchases that are the subject of the Complaint.

29. Therefore, because the Complaint defines the putative Class and Subclasses in the broad and inclusive manner noted above and because it alleges that Plaintiff and putative class members would not have purchased virtual currency or in-game items but for the allegedly deceptive acts and practices of Take-Two, the above demonstrates that that the Complaint seeks relief amounting to greater than $5 million, as is required for CAFA jurisdiction.

30. Accordingly, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## IV. CONCLUSION

31. WHEREFORE, having provided notice as required by law, Defendant hereby removes the above-captioned action to the United States District Court for the Northern District of Illinois.

Dated: February 25, 2022

    Respectfully submitted,

    KELLEY DRYE & WARREN LLP

    By: _/s/Matthew Luzadder_
        Matthew Luzadder
        mluzadder@kelleydrye.com
        KELLEY DRYE & WARREN LLP
        333 West Wacker Drive
        26th Floor
        Chicago, IL 60606
        Telephone: (312) 857-7070
        Facsimile: (312) 857-7095

– and –

KELLEY DRYE & WARREN LLP
Michael C. Lynch
mlynch@kelleydrye.com
James B. Saylor
jsaylor@kelleydrye.com
3 World Trade Center
175 Greenwich Street
New York, New York, 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

Lauri A. Mazzuchetti
lmazzuchetti@kelleydrye.com
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

*Attorneys for Defendant Take-Two Interactive Software, Inc.*