UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| L.A., by and through her Guardian Maurice Andrews, *individually and on behalf of all similarly situated individuals*, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 22-cv-50071 |
| v. | ) ) | Hon. Iain D. Johnston |
| Take-Two Interactive Software, Inc., *a Delaware corporation*, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Defendant's motion to compel arbitration and dismiss, Dkt. 15, is granted. Civil case terminated.

## STATEMENT

L.A. is a minor, who brings this suit by her guardian. Plaintiff seeks to represent a proposed class of persons in the United States who had an account with Defendant Take-Two Interactive, Inc. through its video game NBA 2K. Specifically, the alleged class would be account holders who either (1) exchanged virtual currency for an in-game benefit or (2) who purchased virtual currency or other in-game benefit for use within the game. Among other things, Plaintiff alleges that Take-Two's business practices were deceptive because it is aware that a significant population of the individuals who play its games are minors and thus not capable of entering binding contracts for purchases of goods, and Defendant refuses to permit minors or their guardians to seek refunds for purchases made by minors. Defendants removed this matter to federal court, and before the Court is a motion to compel arbitration and dismiss or stay litigation. Dkt. 15.

### Facts

To use the online services associated with the NBA 2K game, users must agree to the Terms of Service (TOS), End User License Agreement (EULA), and Privacy Policy. Specifically, the user must click on two buttons—one that displays the EULA and TOS, the other that displays the Privacy Policy—before the user can click "I Agree" and create an account. Dkt. 15-1, ¶¶ 7-14. The EULA includes a "Limited Software Warranty And License Agreement," which provides that the user "must be an adult of the legal age of majority" to enter into the license agreement. Dkt. 15-5, at 10. The EULA also includes a "No Refund" policy that

1

provides, "All purchases of [Virtual Currency and Virtual Goods] are final and under no circumstances will such purchases be refundable, transferable, or exchangeable." *Id.* at 15.

Critically, the EULA contains a broad individual arbitration agreement with a waiver for class action claims. This arbitration agreement incorporates the Federal Arbitration Act (FAA) and states that arbitration shall be conducted by Judicial Arbitration Mediation Services, Inc. (JAMS) under its Streamlined Arbitration Rules and Procedures. Dkt. 15-1, at 7-8. The JAMS rules are incorporated into the EULA, requiring that "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." Dkt. 15-6, at 11.

Parties' Contentions

Take-Two filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3)[1], asserting that the action must be dismissed because of the arbitration provision. Dkt. 15-6, at 20. Take-Two asserts that Plaintiff agreed to the arbitration provision when she clicked the "I Agree" button, so that questions regarding the validity, enforceability, or scope of the arbitration agreement must be decided by the arbitrator based on the delegation clause in its terms. Dkt. 15-6, at 13-17. Specifically, Take-Two asserts that the incorporation of the JAMS Rules require that "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought…shall be submitted to and ruled on by the Arbitrator." *Id.* at 11 (quoting JAMS Rule 8(b)).

In response, Plaintiff asserts that there was no contractual relationship. Dkt. 21, at 4-5. The lack of a contract is the premise for all of Plaintiff's arguments and she repeatedly disavows any contract. Dkt. 21, at 8 ("there was not" a contract). Indeed, the argument headings in Plaintiff's brief repeatedly assert that there was no contractual relationship between Plaintiff and Take-Two. Dkt. 21, at 4 ("Plaintiff and Defendant have no contractual relationship, meaning no agreement to arbitrate Plaintiff's claims was ever formed."); Dkt. 21, at 7 ("The Parties Dispute Regarding Whether Any Contract Was Even Formed Between Plaintiff and Defendant Must Be Resolved By This Court, Rather Than An Arbitrator."). And if there is no contractual relationship, according to Plaintiff, she cannot be bound to the arbitration provision. Dkt. 21, at 4, 8.

Although Take-Two makes many persuasive and valid arguments that would also support granting the Rule 12(b)(3) motion,[2] the Court finds that the threshold question of contract enforceability—not formation—was delegated to the arbitrator. And, despite what Plaintiff

---

[1] Dkt. 15-6, at 20. In the Seventh Circuit, Rule 12(b)(3) is the correct procedural vehicle for a motion to compel arbitration. *Dr. Robert L. Meinders, D.C. Ltd. V. UnitedHealthcare, Inc.*, 800 F.3d 853, 856 n.1 (7th Cir. 2015).

[2] This is particularly true because Defendant presented evidence in support of its motion. Instead of responding with evidence, Plaintiff primarily rested on her pleadings. This was insufficient. The procedure used under Rule 12(b)(3) seeking to enforce an arbitration provision is akin to the procedure for a summary judgment motion. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). So, when Plaintiff was confronted with evidence supporting the motion to compel arbitration, Plaintiff could not simply rely on her pleadings. Instead of controverting Defendant's evidence with evidence—for example, a declaration—Plaintiff merely contended that Defendant had not proven a fact. Dkt. 21, at 7-8. Again, this is insufficient.

repeatedly argues in her response brief, there is no dispute that there was, in fact, a contractual relationship between Plaintiff and Take-Two under the complaint's allegations.

Discussion

Allegations in pleadings—such as complaints—are judicial admissions, which trump evidence. *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000). Because judicial admission are formal concessions, a party can plead itself out of court by alleging facts that show it has no claim. *Soo Line R.R. v. St. Louis S.W. Ry.*, 125 F.3d 481, 483 (7th Cir. 1997). The rationale behind this rule is plain—a party cannot be allowed to controvert what it has already unequivocally told a court is the truth. *Id*. Additionally, a court is not obligated to disregard factual allegations that undermine a party's claim. *Pugel v. Bd. of Trs. of the Univ. of Ill.*, 378 F.3d 659, 665 (7th Cir. 2004). In the Seventh Circuit, a plaintiff may put forth additional factual allegations in its brief in response to a motion to dismiss. *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439 (7th Cir. 1994). But those additional fact must be *consistent* with the allegations in the complaint. *Id*.; *Flying J, Inc. v. City of New Haven*, 549 F.3d 538,542 n.1 (7th Cir. 2008). So, when additional factual allegations presented in a response brief are inconsistent with the allegations in the complaint, the court disregards those new allegations. *See, e.g., Chavez v. Ill. State Police*, 251 F.3d 612, 650 (7th Cir. 2001).

Plainly, Plaintiff's entire complaint is premised upon a contractual relationship between L.A. and Take-Two. Dkt. 1-1, at 2 ("contracts into which they entered"). So, it is unsurprising that throughout Plaintiff's 34-page complaint, there are many specific factual allegations that a contract existed between L.A. and Take-Two. Dkt. 1-1, at 17, 19, 27, 29. Indeed, the complaint specifically alleges, "Defendant enters into a contract with a minor when an in-game purchase by the minor is confirmed, and thus accepted. Defendant gives the consideration of digital content and entertainment service of in-game purchases exchanged for consideration of returned purchase value in actual money from the minor." Dkt. 1-1, at 28. The complaint goes on to allege that "[t]he contracts between Defendant and the members of the Class who are minors are voidable." Dkt. 1-1, at 29. To top it off, the complaint's prayer for relief seeks an order "[d]eclaring that the sales contracts between Defendant and minor Plaintiff and the Minor Subclass members are voidable." Dkt. 1-1, at 30.

Plaintiff's attempted about face in its response brief that no contractual relationship existed is inconsistent with the complaint's allegations. So, those allegations in the response brief need not be accepted. Instead, Plaintiff has judicially admitted that L.A. and the class members had contractual relationships with Take-Two.

Once Plaintiff is held to the truth of the complaint's allegations, the analysis is not complex. The FAA allows parties to agree by contract "that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). This is commonly known as a delegation provision and is valid with "clear and unmistakable" evidence of delegation. *Id.* at 530 ("Arbitrability questions may be validly delegated to an arbitrator in an agreement.").[3] When an agreement invokes rules and procedures of JAMS, the court should respect the parties' decision. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281-83 (10th Cir. 2017); *Henry Schein*, 139 S. Ct. at 528 (finding parties agreed to the rules and procedures of the

---
[3] The "clear and unmistakable" requirement should not be confused with the "clear and convincing" burden of proof. *See Chicago Tribune Co. v. NLRB*, 974 F.2d 933, 937 (7th Cir. 1992).

American Arbitration Association); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-864, 2020 U.S. Dist. LEXIS 29052, at *36-37 (N.D. Ill. Feb. 20, 2020) (collecting cases).

  Plaintiff's allegations in the complaint focus on contract validity, not formation. Formation is admitted in the complaint because it alleges the existence of the contractual relationship. Indeed, this is why the complaint speaks to the contract being voidable. But whether a contract is voidable is a question of contract validity and enforcement, not contract formation. *K.F.C. v. Snap, Inc.*, 29 F. 4th 835, 837-38 (7th Cir. 2022). And JAMS Rule 8(b)—which was specifically incorporated into the EULA—provides that validity is determined by the arbitrator. The JAMS Rule is dispositive. *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013); *Casa Arena Blanca LLC v. Rainwater*, No. 21-cv-2037, 2022 U.S. App. LEXIS 7473, at *4 (10th Cir. Mar. 22, 2022). By incorporation of the JAMS Rules, the parties have delegated threshold questions of contract validity with regard to the EULA and arbitrability of any issues therein to an arbitrator.

  Strangely, in response to the motion, Plaintiff cited to the Seventh Circuit's recent decision in *K.F.C. v. Snap, Inc.*, 29 F. 4th 835 (7th Cir. 2022). It is true that in this case the Seventh Circuit stated that contract formation issues cannot be delegated to an arbitrator. *Id*. at 837 ("the arbitrator cannot resolve any issues until the court has ascertained that there is an actual agreement"). But, as this Court has already explained in detail, Plaintiff's complaint alleges that a contract was formed, but that it was a voidable contract. And that allegation is a binding judicial admission, so the formation of a contract is not at issue. In *K.F.C.*, the Seventh Circuit upheld the district court's dismissal based on an arbitration provision. The *K.F.C.* court found that both Illinois and Michigan law held contracts with minors were voidable—as opposed to void—and thus the plaintiff's youth was a defense to enforcement, not an obstacle to formation. *Id.* at 838. In this case, Plaintiff's position is that a contract existed but that the contract was voidable. Dkt. 1-1, at 29 ("the contracts between Defendant and the members of the Class who are minors are voidable—a fact that Defendant denies."). Like Illinois and Michigan, New York law—upon which the complaint is based—holds that contracts with minors are voidable, not void. *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015). Just as in *K.F.C.*, this is an issue of enforcement, not formation, which is a threshold matter to be decided by the arbitrator. Because this is not a contract formation issue, *K.F.C.* is unhelpful to Plaintiff. Indeed, this decision fundamentally supports the dismissal of this action. Just as in *K.F.C.*, the validity of the contract—whether it is voidable— is a matter is to be resolved by an arbitrator, not this Court.

  The final matter is whether the Court should dismiss the action or enter a stay pending the arbitration. Under the FAA, a stay is mandated. 9 U.S.C. § 3. But many circuits have adopted a "a judicially-created exception to [this] general rule which indicates district courts may, in their discretion[,] dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Stonegate Ins. Co. v. Fletcher Reinsurance Co.*, No. 21-cv-3523, 2021 U.S. Dist. LEXIS 232852, at *7 (N.D. Ill. Dec. 6, 2021) (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)). Although the Seventh Circuit has not expressly adopted this approach, many courts within this district have. *Id.* (collecting cases). Indeed, the appeal before the Seventh Circuit in *K.F.C.* was a dismissal based upon a district court finding that the case should be arbitrated, which provided the Seventh Circuit with jurisdiction to hear the appeal. *K.F.C.*, 29 F. 4th at 837. Plaintiff has not taken a position on whether the Court should dismiss or stay this action, so the Court will dismiss the action.

4

Conclusion

The Motion to Compel Arbitration and Dismiss is granted. The case is terminated.

Date: October 3, 2022        By: _____
                                  IAIN D. JOHNSTON
                                  United States District Judge